# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# CIVIL CASE NO. 1:18-cv-00048-MR
# [CRIMINAL CASE NO. 1:16-cr-00002-MR-WCM-1]

| | |
|---|---|
| BARRY CARLTON TAYLOR, ) <br> ) <br> Petitioner, ) <br> ) <br> vs. ) <br> ) <br> UNITED STATES OF AMERICA, ) <br> ) <br> Respondent. ) <br> _____ ) | **MEMORANDUM OF DECISION AND ORDER** |

**THIS MATTER** is before the Court on Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 [CV Doc. 1],[1] the Government's Motion to Dismiss Petitioner's Motion to Vacate [CV Doc. 3], and Petitioner's "Motion for a Ruling on 2255 Motion" [CV Doc. 8].

## I.   BACKGROUND

*Pro Se* Petitioner Barry Carlton Taylor ("Petitioner") was charged in the underlying criminal case with one count of fraud by a commodities pool operator in violation of 7 U.S.C. §§ 6*o* and 13(a)(2) (Count One) and one

---

[1] Citations to the record herein contain the relevant document number referenced preceded by either the letters "CV," denoting that the document is listed on the docket in the civil case file number 1:18-cv-00048-MR, or the letters "CR," denoting that the document is listed on the docket in the criminal case file number 1:16-cr-00002-MR-WCM-1.

count of concealment money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i) (Count Two). [CR Doc. 1: Bill of Information]. Petitioner agreed to plead guilty to both counts. [CR Doc. 3 at 1: Plea Agreement]. In the plea agreement, Petitioner stipulated there was a factual basis for his guilty plea. [Id. at 4]. The factual basis attached to Petitioner's plea agreement set forth the offense conduct in detail. It provided, in pertinent part, as follows:

> The [Petitioner], while acting as a commodity pool operator, as defined in Title 7, United States Code, Section 1a(11), by use of the mails and the internet, employed a scheme and artifice to defraud clients and participants in a Forex pooled investment vehicle; and did engage in a transaction, practice, and course of business which operated as a fraud and deceit upon those clients and participants. [Petitioner] also knowingly engaged in financial transactions involving financial institutions affecting interstate and foreign commerce with proceeds from a specified unlawful activity. Some of these financial transactions were specifically intended to conceal the source, origin, nature, ownership, and control of the proceeds; and some of the financial transactions were in amounts that exceeded $10,000.
> …
> A Special Agent with the Federal Bureau of Investigation interviewed [Petitioner] on April 29, 2015. [Petitioner] admitted to soliciting approximately $2.5 million from approximately 14 or 15 investors for the stated purpose of engaging in Forex trading on their behalf. [Petitioner] admitted that he paid these investors their commissions from principal rather than from (non-existent) earnings. He also admitted that he created and delivered

> account balance statements that were false. [Petitioner] acknowledged withdrawing approximately $100,000 per year as a "salary," despite telling investors that his fees only would come from profits in excess of the promised 2% monthly return.
>
> …
>
> … [Petitioner] would make payments to investors with money fraudulently obtained from other investors and represent them to be profits from the Forex investments. He did this to conceal the scheme and to convince the victims to keep their money invested in [Petitioner's] commodity pool. [Petitioner] convinced some of these victims to reinvest these payments back into the scheme, which further enabled [Petitioner] to access and spend that money for his own purposes and to further the scheme.

[CR Doc. 4 at ¶¶ 1, 13, 14].

The plea agreement set forth the statutory minimum and maximum sentences for each count. The maximum term of imprisonment for Count One was 10 years, 7 U.S.C. §§ 6*o* and 13(a)(2), and the maximum term of imprisonment for Count Two was 20 years, 18 U.S.C. § 1956(a)(1). In accepting Petitioner's guilty plea, a Magistrate Judge conducted a thorough Rule 11 plea colloquy. At the colloquy, the Magistrate Judge read to Petitioner the statutes he was alleged to have violated and the elements of each offense. [CR Doc. 10 at 2-5: Acceptance and Entry of Guilty Plea]. The Magistrate Judge also advised Petitioner of the minimum and maximum possible penalty for each offense as were stated in the plea agreement. [Id.

at 4-6]. Petitioner then testified, before the Court accepted his guilty plea, that (1) he fully understood the charges against him, including the maximum and minimum penalties; (2) he and his attorney had discussed the U.S. Sentencing Guidelines ("Guidelines") and that Petitioner understood how the Guidelines may apply to him; (3) he may receive a sentence that is higher or lower than that called for by the Guidelines; (4) if the sentence imposed were more severe than he expected, Petitioner was still bound by his guilty plea and would have no right to withdraw it; (5) he is, in fact, guilty of the counts to which he was pleading guilty; (6) his plea was voluntary and that, other than promises in the written plea agreement, no one made any promises to Petitioner or threatened him in any way to cause Petitioner to plead guilty; (7) he understood and agreed with the terms of the plea agreement; (8) he understood that by signing the plea agreement he was waiving his right to appeal his conviction and sentence or to contest it in post-conviction proceedings, except on grounds of prosecutorial misconduct or ineffective assistance of counsel; (9) he had had ample time to discuss any possible defenses to the charges against him with his attorney; and (10) he was "entirely satisfied with the services of [his] attorney." [Id.].

Before Petitioner was sentenced, a probation officer prepared a Presentence Investigation Report (PSR). [Doc. 22: PSR]. The probation

officer found Petitioner's Total Offense Level (TOL) to be 33 and his Criminal History Category to be I, yielding a Guidelines range of imprisonment of 135 to 168 months. [Id. at ¶¶ 34, 49, 74]. The probation officer also provided that the statutory maximum terms of imprisonment for Counts One and Two were 10 and 20 years, respectively. [Id. at ¶ 73]. The probation officer noted that, under the Guidelines, the term imposed for Count Two could be served consecutively to Count One, to yield a combined sentence in the range of 135 to 168 months. [Id. at 74 (citing U.S.S.G. § 5G1.2(d))].

Petitioner was sentenced on July 5, 2016. At the sentencing hearing, Petitioner affirmed the testimony he gave at the Rule 11 colloquy. [CR Doc. 46 at 13-15: Sentencing Tr.]. The Court thereafter found that Petitioner's plea was knowing and voluntary and that Petitioner understood the charges and potential penalties and consequences of his plea. [Id. at 15]. Petitioner again stipulated to there being a factual basis for his guilty plea and that the Court could accept the evidence set forth in the factual basis document and PSR as establishing such factual basis. [Id. at 15-16]. The Court then confirmed the Magistrate Judge's acceptance of Petitioner's guilty plea. [Id. at 16]. Accepting the PSR as written, the Court found the TOL to be 33 and the Criminal History Category to be I and concluded the applicable Guidelines range called for a term of incarceration between 135 and 168

months. [Id. at 19-20]. The Court also noted that the statutory maximum for Count One, standing alone, was 120 months. [Id. at 20].

Before imposing a sentence, the Court questioned the Government regarding the issue of overlap in the conduct forming the bases of the two charges, which Petitioner's attorney had raised in objections to the PSR. [CR Doc. 46 at 44-47]. After hearing the Government's position on this issue, the Court was satisfied that there was distinct conduct by Petitioner satisfying at least some elements of each charge. [See id. at 44-47]. The Court sentenced Petitioner to a term of imprisonment of 120 months for Count One and a term of imprisonment of 135 months on Count Two, with the terms to be served concurrently. [Id. at 52]. Judgment on Petitioner's conviction and sentence was entered on July 7, 2016. [CR Doc. 28 at 2: Judgment].

Petitioner filed a timely appeal. [CR Doc. 30]. The Fourth Circuit dismissed Petitioner's appeal on the Government's motion based on the waiver of appellate rights in Petitioner's plea agreement. The Fourth Circuit found that the issue Petitioner sought to raise on appeal fell squarely within that waiver. [CR Doc. 47]. Petitioner did not petition the Supreme Court for writ of certiorari.

Petitioner filed the instant § 2255 Motion to Vacate on February 26, 2018 and submitted his own Affidavit in support thereof. [CV Docs. 1, 1-1].

He asserts two general grounds for relief: (1) "the Concealment Money Laundering charge of Count 2 is based on acts which were a part of and essential to the fraudulent scheme charged in Count 1, and hence such acts merged into the charge of Count 1 and cannot constitute the basis for a second conviction;" and (2) Petitioner was denied ineffective assistance of counsel in entering his guilty plea because his attorney "erroneously advised [Petitioner] and promised [Petitioner] that if he would enter a guilty plea, he would receive a sentence between 60 and 80 months." [CV Doc. 1 at 16, 22]. Petitioner also contends relative to his first ground for relief that he received ineffective assistance of counsel because his attorney failed to bring the relevant "facts and law to the attention of the sentencing court." [Id. at 22].

The Government moved to dismiss Petitioner's motion [Doc. 3], the Petitioner responded to the Government's motion [Doc. 4], and the Government replied [Doc. 6].

The matter is now ripe for disposition.

## II. STANDARD OF REVIEW

A federal prisoner claiming that his "sentence was imposed in violation of the Constitution or the laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in

excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the motion to vacate can be resolved without an evidentiary hearing based on the record and governing case law. See <u>Raines v. United States</u>, 423 F.2d 526, 529 (4th Cir. 1970).

## III.   DISCUSSION

### A.   Ineffective Assistance of Counsel

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. Const. Amend. VI. To show ineffective assistance of counsel, Petitioner must first establish deficient performance by counsel and, second, that the deficient performance prejudiced him. See <u>Strickland v. Washington</u>, 466 U.S. 668, 687-88 (1984). The deficiency prong turns on whether "counsel's representation fell below an objective standard of

reasonableness ... under prevailing professional norms." Id. at 688. A reviewing court "must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." Harrington v. Richter, 562 U.S. 86, 104 (2011) (quoting Strickland, 466 U.S. at 689). The Strickland standard is difficult to satisfy in that the "Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." See Yarborough v. Gentry, 540 U.S. 1, 8 (2003). The prejudice prong inquires into whether counsel's deficiency affected the judgment. See Strickland, 466 U.S. at 691. A petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. In considering the prejudice prong of the analysis, a court cannot grant relief solely because the outcome would have been different absent counsel's deficient performance, but rather, it "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)). Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If

the petitioner fails to meet this burden, a reviewing court need not even consider the performance prong. Strickland, 466 U.S. at 670.

To establish prejudice in the context of a guilty plea, a petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Meyer v. Branker, 506 F.3d 358, 369 (4th Cir. 2007) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)). In evaluating such a claim, statements made by a defendant under oath at the plea hearing carry a "strong presumption of verity" and present a "formidable barrier" to subsequent collateral attacks. Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). Indeed, "in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should dismiss … any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." United States v. Lemaster, 403 F.3d 216, 221-22 (4th Cir. 2005).

When a defendant pleads guilty, he waives all nonjurisdictional defects in the proceedings conducted prior to entry of the plea." United States v. Moussaoui, 591 F.3d 263, 279 (4th Cir. 2010). Thus, a knowing and voluntary guilty plea "forecloses federal collateral review" of prior constitutional deprivations, including allegations of ineffective assistance of

counsel that do not affect the voluntariness of the plea. See Fields v. Att'y Gen. of Md., 956 F.2d 1290, 1294-96 (4th Cir. 1992); accord United States v. Torres, 129 F.3d 710, 715 (2d Cir. 1997); Wilson v. United States, 962 F.2d 996, 997 (11th Cir. 1992); Smith v. Estelle, 711 F.2d 677, 682 (5th Cir. 1983). A guilty plea is valid when it "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." Burket v. Angelone, 208 F.3d 172, 190 (4th Cir. 2000) (citing North Carolina v. Alford, 400 U.S. 25, 31 (1970)).

In Lafler v. Cooper, 566 U.S. 156 (2012), the Supreme Court held that a criminal defendant has a right to the effective representation of counsel during the plea-bargaining stage of the prosecution and that whether this right was abridged is governed by the familiar standard described in Strickland. Lafler, 566 U.S. at 1620-63.

Here, Plaintiff contends that he received ineffective assistance because Petitioner's attorney "erroneously advised him and promised him that if he would enter a guilty plea he would receive a sentence between 60 and 80 months." [CV Doc. 1 at 22]. Further, Petitioner states that "had [he] known that [he] would be sentenced to 135 months, [he] would not have signed the plea agreement." [CV Doc. 1-1 at 5]. Petitioner, however, admits in his Affidavit that he understood that "the plea agreement was open ended

11

with no maximum sentence and [that] it waived his right to appeal [his] conviction." [Id. at 5]. Petitioner also admitted during his plea colloquy that he was advised of the maximum penalties and that the sentence may be higher or lower than the range called for by the Guidelines. Furthermore, Petitioner does not contend that but for his attorney's errors, he would not have pleaded guilty and would have insisted on going to trial. Meyer, 506 F.3d at 369. Rather, in his motion, Petitioner seeks no particular relief at all [CV Doc. 1 at 13] and only alludes in his Affidavit to the possibility of being resentenced [CV Doc. 1-1 at 7 ("A sentence of 36 to 72 months would be in line with other individuals convicted on similar crimes.")].

Assuming the Petitioner's attorney did, in fact, advise Petitioner to expect a lower sentence than Petitioner ultimately received, Petitioner has nonetheless failed to alleged facts sufficient to support his assertion that his attorney provided constitutionally deficient pre-plea representation. As the Supreme Court has stated, "uncertainty is inherent in predicting court decisions." McMann v. Richardson, 397 U.S. 759, 771 (1970). Accordingly, an erroneous prediction by counsel of what a court will do or what sentence a defendant is likely to serve does not establish constitutionally ineffective assistance. See Spiller v. United States, 855 F.3d 751, 757 (7th Cir. 2017); Moreno-Espada v. United States, 666 F.3d 60, 65 (1st Cir. 2012); United

States v. Washington, 619 F.3d 1252, 1258-59 (10th Cir. 2010); cf. Little v. Allsbrook, 731 F.2d 238, 240 (4th Cir. 1984) (holding that an attorney's "grossly misinform[ing]" a defendant "about parole possibilities" did not establish constitutionally ineffective assistance of counsel requiring the district court to permit him to withdraw his guilty plea).

Furthermore, Petitioner's claim that his attorney "promised" him a sentence of 60 to 80 months is belied by Petitioner's sworn Rule 11 plea colloquy testimony. As noted, at the plea hearing, the Magistrate Judge advised Petitioner of the minimum and maximum possible penalty for each offense. [CR Doc. 10 at ¶ 9]. Petitioner then testified, before the Court accepted his guilty plea, that he fully understood the charges against him, including the maximum and minimum penalties; that he is, in fact, guilty of the counts to which he was pleading guilty; that he understood and agreed with the terms of the plea agreement; and that his plea was voluntary and that, other than promises in the written plea agreement, no one made any promises to Petitioner or threatened him in any way to cause Petitioner to plead guilty. [Id. at ¶¶ 11, 26, 27, 31]. The truth of these statements is conclusively established in the absence of extraordinary circumstances, which Petitioner has not shown. See Lemaster, 403 F.3d at 221-22. Petitioner, therefore, has not established that his attorney provided

constitutionally deficient representation based on his pre-plea sentence predictions or advice. This claim, therefore, fails on this ground alone.

Petitioner has failed, in any event, to establish prejudice based on the advice he received about the potential sentence he would face. Petitioner asserts that he would not have signed the plea agreement had he known he would be sentenced to 135 months' imprisonment. Petitioner, however, does not allege that, had he known he would be sentenced to 135 months, he would have insisted on going to trial. Petitioner makes no mention of a desire to proceed to trial at all and only postulates that a sentence of 36 to 72 months would be more appropriate. In short, Petitioner has not demonstrated a reasonable probability that but for his attorney's alleged errors, the result of the proceedings would have been different. Strickland, 466 U.S. at 694.

In sum, Plaintiff's claim of ineffective assistance of counsel relative to his decision to plead guilty is without merit.

### B. Concealment Money Laundering Conviction

As noted, Petitioner's plea agreement contains an explicit waiver of Petitioner's right to challenge his sentence or conviction in appellate proceedings or post-conviction motions except for claims of ineffective assistance of counsel or prosecutorial misconduct. At his Rule 11 hearing,

14

Petitioner swore under oath that he understood he was waiving his right to challenge his sentence or conviction in a post-conviction proceeding, except for those two grounds. [CR Doc. 10 at ¶ 33]. A defendant's solemn declarations in open court a plea agreement "carry a strong presumption of verity." United States v. White, 366 F.3d 291, 295 (4th Cir. 2004) (quoting Blackledge v. Allison, 431 U.S. 63, 74, 97 S. Ct. 1621 (1977)). As such, representations made by a defendant at a Rule 11 hearing, as well as the findings made by the judge therein, constitute a formidable barrier in a subsequent collateral attack. Blackledge, 431 U.S. at 73–74; United States v. DeFusco, 949 F.2d 114, 119 (4th Cir.1991), cert. denied 503 U.S. 997, 112 S. Ct. 1703 (1992) ("[Petitioner] stated during the Rule 11 colloquy that he had not been coerced or threatened into pleading guilty." Such statements "constitute a 'formidable barrier' to collateral proceedings to vacate the plea.").

Moreover, "a criminal defendant may waive his right to attack his conviction and sentence collaterally, so long as the waiver is knowing and voluntary." United States v. Lemaster, 403 F.3d 216, 220 (4th Cir. 2005). Having reviewed the record and as discussed above, the Court finds that Petitioner knowingly and voluntarily entered into his plea agreement and understood that he was waiving his right to attack his conviction and

sentence pursuant to § 2255, except as to ineffective assistance of counsel and prosecutorial misconduct.  As such, Petitioner has waived his challenge to his money laundering conviction.

Furthermore, Petitioner argued on direct appeal that his conviction for concealment money laundering was barred by the merger doctrine.  [CV Doc. 3 at 10].  The Fourth Circuit dismissed his appeal as barred by his appeal waiver.  [CR Doc. 47].  Petitioner cannot now raise the same issue on collateral review.  See United States v. Linder, 552 F.3d 391, 396-97 (4th Cir. 2009) (holding petitioner barred from re-litigating an issue on collateral review that Fourth Circuit had dismissed on direct appeal as barred by appeal waiver).  As such, Petitioner's claim that his conviction for concealment money laundering under 18 U.S.C. § 1956 should be vacated was waived and is procedurally barred, in any event.[2]

Petitioner also claims he received ineffective assistance relative to his conviction for concealment money laundering because his attorney failed to bring purportedly relevant "facts and law to the attention of the sentencing court." [CV Doc. 1 at 22].  This argument is also without merit.  As noted, Petitioner waived the right to challenge his conviction for concealment

---

[2] Even if Petitioner's claim on this ground were not barred, the Court considered it at sentencing [CR Doc. 46 at 43-47] and would find it to be without merit here.

money laundering when he pleaded guilty. At the time of sentencing, Petitioner's knowing and voluntary guilty plea had already been accepted by the Court. As such, whether his attorney argued <u>at sentencing</u> regarding the propriety of Petitioner's concealment money laundering conviction is of no moment. Further, the Court did, in fact, question the Government regarding the merger issue and was satisfied that the underlying offense conduct was distinct, in any event. [<u>See</u> CR Doc. 46 at 43-47]. As such, even if Petitioner's attorney's performance was somehow deficient, Petitioner cannot and has not shown prejudice. <u>See</u> <u>Strickland</u>, 466 U.S. at 694.

## IV. CONCLUSION

For the foregoing reasons, the Court denies Petitioner's § 2255 Motion to Vacate.

The Court further finds that Petitioner has not made a substantial showing of a denial of a constitutional right. <u>See generally</u> 28 U.S.C. § 2253(c)(2); <u>see also</u> <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a "petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong") (<u>citing</u> <u>Slack v. McDaniel</u>, 529 U.S. 473, 484-85 (2000)). Petitioner has failed to demonstrate both that this Court's dispositive procedural rulings are debatable, and that the Motion to Vacate states a

debatable claim of the denial of a constitutional right.  <u>Slack v. McDaniel</u>, 529 U.S. at 484-85.  As a result, the Court declines to issue a certificate of appealability.  <u>See</u> Rule 11(a), Rules Governing Section 2255 Proceedings for the United States District Courts, 28 U.S.C. § 2255.

### **O R D E R**

**IT IS, THEREFORE, ORDERED** that:

1. Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 [Doc. 1] is **DENIED**;

2. Petitioner's Motion for a Ruling on Section 2255 Motion [Doc. 8] is **DENIED** as moot; and

3. Pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability.

**IT IS SO ORDERED**.

Signed: March 3, 2020

Martin Reidinger
United States District Judge